Filed by MB D.C.

ELECTRONIC

**May 29, 2009**

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

EMPRESA DE TELECOMUNICACIONES
DE BOGOTA S.A. E.S.P.,

          Petitioner,

v.

MERCURY TELCO GROUP, INC.,

          Respondent.

_____/

CASE NO.: _____

**09-60811-MC-COHN/SELTZER**

## ETB'S PETITION TO CONFIRM
## AND ENFORCE FOREIGN ARBITRAL AWARD

Petitioner, Empresa de Telecomunicaciones de Bogota S.A. E.S.P. ("ETB"), moves to confirm and enforce a foreign arbitral award rendered in ETB's favor against Respondent, Mercury Telco Group, Inc. ("Mercury"), as set forth below:

### INTRODUCTION

1.      ETB has prevailed in an international commercial arbitration against Mercury that recently was completed in Bogota, Colombia. The arbitrator issued an award in ETB's favor, which is final and enforceable pursuant to the Inter-American Convention on International Commercial Arbitration of 1975, *opened for signature* Jan. 30, 1975, OAS SER A20 (SEPEF), 14 I.L.M. 336 (1975) ("Panama Convention"), which is implemented in the United States pursuant to chapter 3 of Title 9 of the U.S. Code. *See* 9 U.S.C. §§ 301 *et seq.*

2.      In accordance with the express mandate of Congress and the obligations assumed by the United States pursuant to the Panama Convention, this Court must enforce the Award "unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention." 9 U.S.C. § 207 (incorporated by reference at 9 U.S.C. §

ASTIGARRAGA DAVIS MULLINS & GROSSMAN, P.A.

302).  The grounds specified in the Panama Convention are extremely limited, even more limited than those available to oppose a domestic arbitral award pursuant to Chapter 1 of the Federal Arbitration Act ("FAA").

3.     No ground barring enforcement exists here.  Accordingly, ETB is entitled to immediate enforcement of the Award.

**PARTIES**

4.     Petitioner ETB is a corporation organized and existing under the laws of the Republic of Colombia, with its principal place of business in Bogota, Colombia.

5.     Mercury is a corporation organized and existing under the laws of Florida, with its principal place of business in Broward County, Florida.

**JURISDICTION AND VENUE**

6.     This Court has subject matter jurisdiction over these proceedings pursuant to 28 U.S.C. § 1331 and 9 U.S.C. §§ 203 and 302.  *See American Life Ins. Co. v. Parra*, 269 F. Supp. 2d 519, 521 (D. Del. 2003) (federal courts have subject matter jurisdiction to confirm an award under the Panama Convention pursuant to section 1331); *see also Int'l Ins. Co. v. Caja Nacional de Ahorro Y Seguro*, 293 F.3d 392, 396 (7th Cir. 2002) (the Panama Convention provides independent federal question jurisdiction).

7.     This Court also has subject matter jurisdiction over these proceedings pursuant to 28 U.S.C. § 1332(a)(2) because complete diversity exists between the parties and the amount in controversy exceeds $75,000.

8.     Mercury is subject to the personal jurisdiction of this Court because it is a Florida corporation.

ASTIGARRAGA DAVIS MULLINS & GROSSMAN, P.A.

9.     Venue in this action properly lies in this District pursuant to 28 U.S.C. § 1391(b) and 9 U.S.C. §§ 204 and 302.

## BACKGROUND

### The Agreement

10.     ETB and Mercury entered into a written international Collaboration Agreement for the Commercialization of a Prepaid Calling Card Between ETB and Mercury ("the Agreement"), dated September 20, 2005.   A duly certified copy of the parties' written Agreement is attached as **Exhibit "A"** hereto, along with its certified English translation.[1]   In that Agreement, ETB and Mercury agreed to commercialize prepaid calling cards, with Mercury providing the prepaid calling cards and other services and ETB providing the infrastructure and call completion services.

11.     The Agreement contains a clause whereby the parties agreed to resolve their disputes by means of final, binding, and mandatory arbitration:

> *Any dispute between the parties relating to the execution, interpretation, existence, validity, performance, termination, liquidation and other aspects of the Agreement **shall be resolved**... [by] an Arbitral Tribunal, composed of (1) arbitrator who is an attorney and a Colombian citizen.  The Parties shall select the arbitrator by mutual agreement, pursuant to the rules of the arbitration Center and pursuant to the applicable law.  The arbitrator shall decide at law and his or her judgment shall be **final and binding upon the Parties**.  The Tribunal shall abide by Decree 1818 of 1998 and the other legal provisions amending or supplementing it.*
>
> *The Arbitral Tribunal shall be seated in the city of Bogotá, will operate in Spanish, at the Arbitration and Conciliation Center of the Bogotá Chamber of Commerce and will apply the rules of said Center and Colombian law.*
>
> *The Costs of the arbitration will be borne by the non-prevailing party.  The application of this arbitration clause does not imply the suspension of the performance of this Agreement in any way, and therefore the Parties must*

---

[1]     The duly certified copy of the parties written Agreement attached hereto as **Exhibit A** is accompanied by the Affidavit of Isam Huachar Agudelo, who personally signed the Agreement on behalf of ETB.

3

ASTIGARRAGA DAVIS MULLINS & GROSSMAN, P.A.

*continue fulfilling their obligations while the dispute that led to the installation of the Arbitral Tribunal is resolved.*

*See* Agreement, § 26 (emphasis added) (translation provided) (emphasis added).

### The Arbitration

12.      After a dispute arose between the parties, on February 12, 2008, ETB initiated an arbitration with the Arbitration and Conciliation Center of the Bogota Chamber of Commerce (the "Bogota Chamber of Commerce"), pursuant to the procedures set forth in Section 26 of the parties' Agreement.

13.      On February 13, 2008, the Bogota Chamber of Commerce sent Mercury a letter confirming that it had received a copy of ETB's Notice of Arbitration, and it set a meeting for February 27, 2008, so that the parties could mutually agree on the appointment of an arbitrator. A true and correct copy of that letter and its certified translation are attached as **"Exhibit B"** hereto.  The Bogota Chamber of Commerce's February 13, 2008, letter was sent to Mercury via DHL to the address identified in the "notices" section of Section 18 of the Agreement, as well as via e-mail.

14.      On February 15, 2008, Mercury's attorney sent a letter to ETB, confirming that he was "in receipt" of correspondence from ETB notifying Mercury of the meeting that had been scheduled by the Bogota Chamber of Commerce to take place on February 27.  A true and correct copy of that communication is attached as **"Exhibit C"** hereto.[2]

15.      Notwithstanding ETB's actual notice of the February 27, 2008, meeting and its counsel's acknowledgment of same, Mercury did not attend, nor did it communicate with the

---

[2]      The February 15, 2008, letter from Mercury's attorney to ETB was attached in electronic format to an e-mail sent by Mercury's attorney on that same date.  The electronic letter file contains an enabled feature that changes the date of the letter automatically to the date on which the file is opened.  Accordingly, while the exhibited letter displays a date of "May 20, 2009," that is only the date on which the exhibit was printed for this Petition.  The letter attached here as **Exhibit C** was sent on February 15, 2008, as demonstrated by the e-mail contained in **Exhibit C**.

4

Bogota Chamber of Commerce requesting more time in which to attend and respond to its request for a meeting in which an arbitrator could be mutually designated by the parties.

16.      Given Mercury's lack of attendance at the February 27 meeting, ETB requested that the Bogota Chamber of Commerce employ an alternate method for the designation of the arbitrator, as provided for in Article 4 of that Chamber's Arbitration Rules.  That same day, the Bogota Chamber of Commerce notified Mercury (via DHL to two different addresses) that it was going to be using an alternate means for the appointment of the Tribunal.  True and correct copies of the Chamber's communications, together with certified translations, are attached as **Exhibit "D"** hereto.

17.      Having failed to receive a response from Mercury, on March 6, 2008, the Bogota Chamber of Commerce performed a public "drawing" for the selection of an arbitrator from its roster of approved arbitrators.    At that time, Marcela Romero de Silva, an experienced commercial attorney and Colombian citizen, was designated as arbitrator, and on April 3, 2008, she was confirmed to that role by the Bogota Chamber of Commerce.  That certification was sent to Mercury at three different addresses, one of which included the office of its U.S. attorney. **Exhibit "E."**

18.      Thereafter, Mercury continuously was given notice and an opportunity to participate in the proceedings, which it chose not to exercise.

19.      On June 24, 2008, Mercury's U.S. attorney wrote the Bogota Chamber of Commerce confirming that Mercury was in receipt of ETB's Notice of Arbitration, but notifying the Bogota Chamber of Commerce that it refused to participate in the arbitration because: (1) his own law firm had not been "notified," even though in the same letter he admitted that Mercury, the party to the arbitration, in fact had been properly notified of the arbitration (and in fact had

provided him with a copy of ETB's Notice of Arbitration); and (2) in disregard of its contractual obligation to arbitrate any disputes it may allegedly have with ETB, Mercury had filed, on October 25, 2007, an action involving the same factual allegations that were subject to arbitration and that it intended to litigate the parties' dispute despite the arbitration clause. A true and correct copy of that letter is attached as **"Exhibit F"** hereto.[3]   None of the reasons outlined in that June 24 letter constitute valid reasons for refusing to participate in a validly instituted and contractually binding arbitral proceeding.

20.     On December 4, 2008, Mercury's U.S. Attorney once again wrote the Bogota Chamber of Commerce confirming that Mercury was in receipt of ETB's Notice of Arbitration, but again refusing to participate in the proceedings for the same reasons that had been outlined in its June 24 communication.   A true and correct copy of that letter is attached as **"Exhibit G"** hereto.

### The Award

21.     The Tribunal held numerous hearings between October 16, 2008, and March 3, 2009, in which several fact and expert witnesses were presented and examined.  The Tribunal, through the Bogota Chamber of Commerce, also summoned Mr. Joseph A. Gordon, in his capacity as Mercury's legal representative, or whoever acted in his stead, to an examination to be conducted before the Tribunal on November 25, 2008, but Mr. Gordon did not appear.

22.     On March 25, 2009, the arbitrator rendered a 71-page final award in ETB's favor (the "Award").  A duly authenticated original of the Award is attached as **Exhibit "H"** hereto, along with its certified English translation.

---

[3]     Mercury did not effectuate service of process on ETB of its federal court complaint until March 19, 2009.

6

Astigarraga Davis Mullins & Grossman, P.A.

23.     That Award finds that Mercury had been properly notified of the arbitration proceedings and that it chose not to participate in those proceedings at its own risk. Particularly, the Tribunal determined that:

> *Mercury knew timely about the existence of this arbitration and that although it had the possibility of becoming a party to it, it chose not to do so.... Mercury's decision of not becoming a party to this arbitration in order to exercise its legitimate right of defense and respond during the agreed proceedings the default charges filed by its co-contracting party, does not invalidate this arbitration, since according to the applicable legislation, although it was prudent and advisable for [M]ercury to become a party, its intervention in the procedure was not necessarily required; for the arbitration process to be valid, it was enough for Mercury to be duly notified of the establishment of the Arbitral Tribunal, which is what in fact happened.* Award, pgs. 22-23 (of the English translation at **Exhibit H**).

24.     In addition, the Award found in favor of ETB by determining as follows:

(a) The Agreement was terminated by virtue of its expiration on September 20, 2007, upon timely notice given by EBT to Mercury. Award, Ruling § 1, pg. 68 (of the English translation at **Exhibit H**).

(b) Mercury failed to comply with the Agreement because (i) it failed to timely pay EBT its share in the revenue from the international pre-paid telephone card business; (ii) it failed to comply with its obligations upon the termination of the Agreement; (iii) it promoted or allowed the illegal use of ETB's technical infrastructure; (iv) it failed to demonstrate having the legal authorizations it claimed to have in the Agreement; and (v) it failed to provide sufficient information about its activities. Award, Ruling § 2, pg. 68 (of the English translation at **Exhibit H**).

(c) Mercury was ordered to indemnify ETB for the damages it caused ETB by failing to comply with its contractual obligations. Award, Ruling § 3, pg. 68 (of the English translation at **Exhibit H**).

(d) For revenue share ETB was entitled to receive under the Agreement, Mercury was ordered to pay: (i) US$5,299,040.96; (ii) interest on that amount through the date of the Award in the amount of US$692,779.36; (iii) interest on the principle amount of US$5,299,040.96 from the date of the Award until payment in full by Mercury calculated at the LIBOR rate as of March 25, 2009, plus 3 points[4] (3.556%).   Award, Ruling § 4; pg. 69 (of the English translation at **Exhibit H**).

(e) For costs incurred by ETB for calls serviced after the Agreement was terminated, Mercury was ordered to pay: (i) US$888,950.00; (ii) interest on the principle amount of US$888,950.00 from the date of the Award until payment in full by Mercury calculated at the LIBOR rate as of March 25, 2009, plus 3 points[5] (3.556%).  Award, Ruling § 5; pg. 69 (of the English translation at **Exhibit H**).

(f) Mercury was ordered to immediately cease directly or indirectly using, commercializing or exploiting any prepaid calling card that implicates the use of ETB's technological infrastructure or the activation of Pin Numbers that route calls to ETB's infrastructure. Award, Ruling § 6; pg. 69 (of the English translation at **Exhibit H**).

(g) ETB was authorized to adopt the technological measures it may deem necessary to prevent its technological infrastructure from being accessed through unauthorized prepaid cards and it was ordered that Mercury shall be liable for, and shall hold ETB harmless from, any eventual claim from users or cardholders that might be affected by such measures.  Award, Ruling § 7, pg. 69 (of the English translation at **Exhibit H**).

---

[4]      As specified in §16.3.5 of the Agreement, and as detailed at pgs. 62-64 of the English translation of the Award at **Exhibit H**.

[5]      As specified in §16.3.5 of the Agreement.

(h) Mercury was ordered to pay ETB the fees and costs of the Tribunal as follows: (i) Col$102,575,000.00; (ii) interest on that amount from the date that ETB made the payment on September 25, 2008, until the date that Mercury has paid that amount in full at the highest authorized default rate of 23.74%.[6]  Award, Ruling § 8; pgs 69-70 (of the English translation at **Exhibit H**).

(i) for ETB's attorneys' and expert fees, Mercury is ordered to pay ETB the amount of Col$198,075,000.00.  Award, Ruling § 9; pg 70 (of the English translation at **Exhibit H**).

## ARGUMENT

### THE COURT SHOULD CONFIRM AND ENFORCE THE AWARD BECAUSE IT FALLS UNDER THE PANAMA CONVENTION AND NONE OF THE SPECIFIED GROUNDS UNDER THE CONVENTION FOR REFUSAL OR DEFERRAL EXISTS

25.    The Award is the result of an arbitration covered by the Panama Convention, which the United States has signed and ratified and is enforced by chapter 3 of Title 9 of the U.S. Code.[7]  *See* 9 U.S.C. § 301.  Chapter 3 of Title 9 incorporates by reference various provisions of chapter 2, which implements the separate Convention on the Recognition and Enforcement of Foreign Arbitral Awards of June 10, 1958, *opened for signature* June 10, 1958, 21 U.S.T. 2517, 330 U.N.T.S. 38 ("New York Convention").  Specifically, section 302 applies to Panama Convention awards the provisions of section 207 of the FAA, which provides:

---

[6]     As specified at pg. 67 of the English translation of the Award at **Exhibit H** and by the Colombian Financial Superintendency, article 884 of the Commercial Code and article 191 of the Code of Civil Procedure.

[7]     Although the Award also would be enforceable under the New York Convention itself, chapter 3 of the FAA provides that where the requirements of both the New York and Panama Conventions are met, the Panama Convention shall apply in situations where "a majority of the parties to the arbitration agreement are citizens of a State or States that have ratified or acceded to the [Panama] Convention and are member States of the Organization of American States." 9 U.S.C. § 305(1).  Since both Colombia and the United States, the States from where the parties are citizens, have ratified the Panama Convention and are members of the OAS, the appropriate analysis in this case is under the Panama Convention.  *See* Panama Convention Signatories, *http://www.oas.org/juridico/English/sigs/b-35.html* (last visited May 15, 2009).

9

> Within three years after an arbitral award falling under the Convention is made, any party to the arbitration may apply to any court having jurisdiction under this chapter for an order confirming the award as against any other party to the arbitration. **The court shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention.**

9 U.S.C. § 207 (emphasis added); *see also Scherk v. Alberto-Culver Co.,* 417 U.S. 506, 520 n. 15 (1974) ("[t]he goal of the convention, and the principal purpose underlying American adoption and implementation of it, was to encourage the recognition and enforcement of commercial arbitration agreements and international contracts and to unify the standard by which the agreements to arbitrate are observed and arbitral awards are enforced in the signatory countries"); *Ledee v. Ceramiche Ragno,* 684 F.2d 184, 186-87 (1st Cir. 1982) (same).

26.     In keeping with the strong federal policy favoring arbitration, the enforcement of an arbitration award under the Panama Convention is a summary procedure. *Parra,* 269 F. Supp. 2d at 524 (confirming arbitral award pursuant to the Panama Convention and stating that "'the confirmation of an arbitration award is a summary proceeding that merely makes what is already a final arbitration award a judgment of the court'") (citation omitted); *Banco de Seguros del Estado v. Mutual Marine Offices, Inc.*, 257 F. Supp. 2d 681, 685 (S.D.N.Y. 2003) (pursuant to the Panama Convention, the "confirmation of an arbitration award is a summary proceeding that merely makes what is already a final arbitration award a judgment of the court"); *RZS Holdings AVV v. PDVSA Petroleos S.A.*, 598 F. Supp. 2d 762, 765 (E.D. Va. 2009) (same).

27.     The Award clearly falls under the terms of the Panama Convention. ETB and Mercury are citizens of countries that are parties to the Convention (Colombia and the United States), the parties' dispute is governed by Colombian law, and the arbitration took place in Bogota, Colombia. *See Parra,* 269 F. Supp. 2d at 524 (Panama Convention applied to enforcement proceeding between citizens of Argentina and Uruguay); *Nicor Int'l Corp. v. El*

10

*Paso Corp.*, 292 F. Supp. 1357, 1372 (S.D. Fla. 2003) (Panama Convention applied to enforcement proceeding between citizens of Panama and the United States); *RZS Holdings*, 598 F. Supp. 2d at 765 (Panama Convention applied to enforcement proceeding between citizens of Venezuela and the United States).

28.    Indeed, the Panama Convention by its terms covers any "agreement in which the parties undertake to submit to arbitral decision any differences that may arise or have arisen between them with respect to a commercial transaction." Panama Convention, Art. 1.  The Agreement and the Award themselves demonstrate that this matter involves a dispute "with respect to a commercial transaction."

29.    The Panama Convention provides that covered awards must be enforced, except on very specific and limited grounds.  "Section 207 provides that confirmation is mandatory 'unless . . . [a court] finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the . . . [Panama] Convention.'" *Parra*, 269 F. Supp. at 524 (quoting 9 U.S.C.A. § 207); *Empresa*, 106 F. Supp. 2d at 1024 (same).  Furthermore, "[t]he burden of proof is on the party defending against enforcement of the arbitral award" under the Panama Convention. *Empresa Constructora Contex Limitada v. Iseki, Inc.*, 106 F. Supp. 2d 1020, 1024 (S.D. Cal. 2000).

30.    There are only two substantive grounds on which a competent authority of a State Party may refuse to enforce an award:  if "the subject of the dispute cannot be settled by arbitration under the law of that State" and if "the recognition or execution of the decision would be contrary to the public policy ("ordre public") of that State." Panama Convention, Art. 5.2. Neither exception is applicable here.  Far from prohibiting the resolution of commercial disputes such as ETB's and Mercury's by binding arbitration, U.S. law strongly encourages arbitration of

11

Astigarraga Davis Mullins & Grossman, P.A.

such disputes and the recognition of resulting awards. *See, e.g., Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.* 473 U.S. 614, 615 (1985) (noting the strong "federal policy in favor of arbitral dispute resolution, a policy that applies with special force in the field of international commerce"); *Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.,* 460 U.S. 1, 24 (1983) (discussing the "liberal federal policy favoring arbitration"); *Olsher Metals Corp. v. Olsher,* 2004 WL 5394012, * 2 (11th Cir. 2004) ("[t]he Federal Arbitration Act evinces a 'liberal federal policy favoring arbitration agreements[],' and this presumption in favor or arbitration 'applies with special force in the field of international commerce'") (internal citations omitted).

31.     The Convention also allows a State Party to refuse enforcement if the party against which enforcement is sought raises one of the following procedural objections: incapacity of the contracting parties or invalidity of the arbitration agreement; failure of notice; inapplicability of the arbitration agreement to the particular dispute; irregularity in the formation of the arbitral tribunal; or that the award is not yet binding or has been annulled or superseded by a competent authority. *See* Panama Convention, Art. 5.1.

32.     None of these procedural grounds applies here. While Mercury may attempt to argue that Article 5(1)(b) of the Panama Convention precludes the Award's enforcement,[8] that argument fails. *See Employers Ins. of Wausau v. Banco Seguros Del Estado*, 34 F. Supp. 2d 1115, 1120 (E.D. Wis. 1999) (rejecting argument that respondent had not been properly notified of the arbitration pursuant to Article 5(1)(b) of the Panama Convention upon finding that

---

[8]     Article 5(1)(b) of the Panama Convention provides in relevant part:

> The recognition and execution of the decision may be refused, at the request of the party against which it is made, only if such party is able to prove to the competent authority of the State in which recognition and execution are requested.....b. That the party against which the arbitral decision has been made was not duly notified of the appointment of the arbitrator or of the arbitration procedure to be followed, or was unable, for any other reason, to present his defense.

12

ASTIGARRAGA DAVIS MULLINS & GROSSMAN, P.A.

Respondent had "effectively" been notified of the arbitral proceedings when it had been served with papers for a motion to compel arbitration in a court action); *Anhui Provincial Import & Export Corp, v. Hart Enters. Int'l., Inc.*, 1996 WL 229872, *3 (S.D.N.Y. 1996) (respondent had been properly notified under Article V(1)(b) of the New York Convention when Claimant showed that Respondent was "aware" of the arbitration as set forth in a letter he had written asking Claimant to suspend the arbitration proceedings pending resolution of a related court action).[9]

33.    ETB therefore is entitled to immediate confirmation and enforcement of the Award under the Panama Convention and respectfully requests that the Court enter judgment accordingly.[10]

---

[9]    Although this case is governed by the Panama Convention, ETB cites to both Panama Convention and New York Convention case law because the relevant provisions are nearly identical. *See, e.g., Employers Ins. of Wasau v. Banco de Seguros Del Estado*, 199 F.3d 937, 941 n.1 (7th Cir. 1999) (asserting that "the provisions of both [New York and Panama] conventions are interpreted to reach the same result"); H.R. Rep. No. 501, 101st Cong., 2d Sess. 4 (1990), *reprinted in* 1990 U.S.C.C.A.N. 675, 678) ("[t]he New York Convention and the [Panama] Convention are intended to achieve the same results, and their key provisions adopt the same standards, phrased in the legal style appropriate for each organization. It is the Committee's expectation, in view of that fact and the parallel legislation under the Federal Arbitration Act that would be applied to the Conventions, that courts in the United States would achieve a general uniformity of results under the two conventions").

[10]    As described herein, the Arbitral Tribunal order that Mercury immediately cease directly or indirectly using, commercializing or exploiting any prepaid calling card that implicates the use of ETB's technological infrastructure or the activation of Pin Numbers that route calls to ETB's infrastructure. Award, Ruling § 6; pg. 69 (of the English translation at **Exhibit H**). This Court should give effect to that Arbitral order by granting permanent injunctive relief against Mercury. Well-settled law provides that where a contract does not set forth or limit the available remedies for a breach of the agreement, arbitrators have wide latitude in fashioning an appropriate remedy in any way reasonably related to the terms of the parties' agreement. Brandon, Jones, Sandall, Zeide, Kohn, Chalal & Musso, P.A. v. MedPartners, Inc., 203 F.R.D. 677, 686 (S.D. Fla. 2001). Here, the Agreement does not include any limitation on the Arbitral Tribunal's power to grant any relief deemed appropriate. Accordingly, the Arbitral Tribunal had authority to order the cessation of the enjoined activities by Mercury. In enforcing the award rendered by the Arbitral Tribunal, in this case, this Court has the power and duty to grant permanent injunctive relief against Mercury. National Ass'n of Broadcast Employees & Technicians, AFL-CIO v. Sunbeam Television Corp., 606 F. Supp. 111, 114 (S.D. Fla. 1984) (Court had "the power and duty to enforce an arbitration award by means of injunctive or other relief where the actions being challenged are those which the earlier arbitration award specifically prohibited"); Applewhite v. Sheen Financial Resources, Inc., 608 So. 2d 80, 83 (Fla. 4th DCA 1992) (affirming trial court's confirmation arbitrators' award enjoining former employees from contact with employer's clients). See also J.J. Gregory Gourmet Servs., Inc. v. Antone's Import Co., 927 S.W. 2d 31, 36 (Tex. Ct. App. 1995) (arbitrators did not exceed their authority by granting injunctive relief where the parties' agreement did not specifically prohibit this remedy).

## CAUSE OF ACTION
### (Confirmation and Enforcement of Arbitration Award)

34.     The Agreement constituted a written agreement between the parties to arbitrate their dispute.

35.     The United States and Colombia are signatories to the Panama Convention.

36.     Article IV of the Panama Convention, which is implemented by 9 U.S.C. §§ 301, *et seq.,* requires that each signatory to the Convention recognize and enforce foreign arbitral awards.

37.     The Award is an arbitration award falling under the Panama Convention rendered in ETB's favor and against Mercury.

38.     ETB therefore is entitled to confirmation and enforcement of the Award.

### PRAYER FOR RELIEF

WHEREFORE, based on the allegations set forth above, ETB requests that this Court enter a judgment:

39.     Confirming and enforcing the arbitral Award rendered against Mercury pursuant to the Panama Convention and 9 U.S.C. § 301 *et seq.*;

40.     Awarding ETB the sums of US$6,880,770.32 and Col$300,650,000, plus interest, as follows:

   a.  Interest on the principal amount of US$5,299,040.96 at the rate of 3.556% from March 25, 2009 until payment;

   b.  Interest on the principal amount of US$888,950.00 at the rate of 3.556% from March 25, 2009 until payment;

14

     c.   Interest on the principal amount of Col\$102,575,000.00 at the rate of 23.74% from September 25, 2008, until payment; and

     d.   Interest on the principal amount of Col\$198,075,000.00 on which the Arbitral Tribunal did not award interest from March 25, 2009, until payment.

41.    Enjoining Mercury from directly or indirectly using, marketing, or exploiting any prepaid calling cards that implicate the use of ETB's technical infrastructure or the activation of PIN numbers that route calls to ETB's infrastructure;

42.    Awarding ETB its attorneys' fees and costs; and

43.    Providing ETB with such other relief as this Court deems just and proper.[11]

Date: May 29, 2009

Respectfully submitted,

**ASTIGARRAGA DAVIS MULLINS & GROSSMAN, P.A.**
*Counsel for Petitioner ETB*
701 Brickell Avenue, 16th Floor
Miami, Florida 33131
Tel: (305) 372-8282
Fax: (305) 372-8202
E-mail: emullins@astidavis.com

By: _____
Edward M. Mullins
Fla. Bar No. 863920
Arnoldo B. Lacayo
Fla. Bar No. 675482
M. Cristina Cárdenas
Fla. Bar No. 672491

00087391.DOC

---

[11]    An award of post-award pre-judgment interest is appropriate in the Court's discretion. *Industrial Risk Insurers v. M.A.N. Gutehoffnungshutte GmbH*, 141 F.3d 1434, 1447 (11th Cir. 1998).

15

**09-60811-MC-COHN/SELTZER**

JS 44 CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.) **NOTICE: Attorneys MUST Indicate All Re-filed Cases Below.**

FILED by ___ D.C.
ELECTRONIC
**May 29, 2009**

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

### I. (a) PLAINTIFFS

EMPRESA DE TELECOMUNICACIONES DE BOGOTA S.A. E.S.P.

**DEFENDANTS**

MERCURY TELCO GROUP, INC.

**(b)** County of Residence of First Listed Plaintiff  **Foreign - Colombia**
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Edward M. Mullins
Astigarraga Davis Mullins & Grossman, P.A.
701 Brickell Avenue, 16th Floor
Miami, Florida 33131

Attorneys (If Known)

Paul K. Silverberg and Kraid S. Weiss
Silverberg & Weiss, P.A.

09 MC 60811-JIC/BSS

**(d)** Check County Where Action Arose: ☐ MIAMI- DADE ☐ MONROE ☑ BROWARD ☐ PALM BEACH ☐ MARTIN ☐ ST. LUCIE ☐ INDIAN RIVER ☐ OKEECHOBEE HIGHLANDS

### II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1 U.S. Government Plaintiff
☑ 3 Federal Question (U.S. Government Not a Party)
☐ 2 U.S. Government Defendant
☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

### III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☑ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☒ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☑ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

### IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/Exchange |
| ☐ 190 Other Contract | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 195 Contract Product Liability | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | **IMMIGRATION** | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | ☐ 462 Naturalization Application | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | ☐ 463 Habeas Corpus-Alien Detainee | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | ☐ 465 Other Immigration Actions | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | | | |

### V. ORIGIN (Place an "X" in One Box Only)

☑ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Re-filed (see VI below)
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

### VI. RELATED/RE-FILED CASE(S).

(See instructions second page):

a) Re-filed Case ☐ YES ☐ NO     b) Related Cases ☑ YES ☐ NO

JUDGE KENNETH A. MARRA     DOCKET NUMBER 07-CV-61529-KAM

### VII. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing and Write a Brief Statement of Cause (**Do not cite jurisdictional statutes unless diversity**):

Petition to Confirm and Enforce Foreign Arbitral Award pursuant to 9 U.S.C. 301 et seq,

LENGTH OF TRIAL via __0__ days estimated (for both sides to try entire case)

### VIII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $
CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☑ No

ABOVE INFORMATION IS TRUE & CORRECT TO THE BEST OF MY KNOWLEDGE

SIGNATURE OF ATTORNEY OF RECORD

DATE
May 29, 2009

ATTORNEY FOR PETITIONER

FOR OFFICE USE ONLY

AMOUNT 39.00     RECEIPT # 546417     IFP

16 of 16