UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 09-60811-mc-MARRA/JOHNSON

EMPRESA DE TELECOMMUNICACIONES
DE BOGOTA S.A. E.S.P.,

    Petitioner,

vs.

MERCURY TELCO GROUP, INC.,

    Respondent.
_____/

**OPINION AND ORDER**

This cause is before the Court upon Petitioner EMPRESA DE TELECOMMUNICACIONES DE BOGOTA S.A. E.S.P.'s ("Petitioner") Petition to Confirm and Enforce Foreign Arbitral Award (DE 1), filed May 29, 2009.  The petition is fully briefed and ripe for review.  The Court held a hearing on the petition on October 1, 2009.  The Court has carefully considered the petition, response, and reply, and is otherwise fully advised in the premises.

Background[1]

Petitioner and Respondent Mercury Telco Group, Inc. ("Respondent") entered into a January 21, 2005 Prepaid Card Cooperation Agreement (the "Agreement"), wherein the parties agreed to commercialize prepaid calling cards for long distance calls.  Mercury was to provide

---

[1] The Court incorporates by reference its Order entered this date dismissing the case of Mercury Telco Group, Inc. v. Empresa de Telecommunicaciones de Bogota S.A. E.S.P., 07-61529 in favor of arbitration and assumes the reader's familiarity with that Order.

1

the calling cards and ETB was to provide the infrastructure and telephone services.  See DE 1

Exh. A[2].  Regarding dispute resolution, the Agreement states as follows:

> Any dispute between the parties relating to the execution, interpretation, existence, validity, performance, termination, liquidation and other aspects of the Agreement shall be resolved first within the Oversight Committee.  If no agreement is reached, the dispute shall be submitted to the legal representatives of the parties to seek a direct resolution by them; in the absence of a complete or definitive resolution, the dispute shall be submitted by either Party to an Arbitral Tribunal, composed of (1) arbitrator who is an attorney and a Colombian citizen.  The Parties shall select the arbitrator by mutual agreement, pursuant to the rules of the arbitration Center and pursuant to the applicable law.  The arbitrator shall decide at law and his or her judgment shall be final and binding upon the Parties.  The Tribunal shall abide by Decree 1818 of 1998 and the other legal provisions amending or supplementing it.
> The Arbitral Tribunal shall be seated in the city of Bogota, will operate in Spanish, at the Arbitration and Conciliation center of the Bogota Chamber of Commerce and will apply the rules of said Center and Colombian law.
> The Costs of the arbitration will be borne by the non-prevailing party.  The application of this arbitration clause does not imply the suspension of the performance of this Agreement in any way, and therefore the Parties must continue fulfilling their obligations while the dispute that led to the installation of the Arbitral Tribunal is resolved.

Id. at § 26.

Pursuant to the arbitration clause of the Agreement, Petitioner initiated an arbitration proceeding against Respondent in Bogota, Colombia on February 12, 2008.  On February 13, 2008, the Bogota Chamber of Commerce sent Respondent a letter confirming that it had received a copy of Petitioner's Notice of Arbitration, and set a meeting for February 27, 2008 for the parties to agree on the appointment of an arbitrator.  See DE 1 Exh. B.  The February 13, 2008 Bogota Chamber of Commerce letter was sent to Respondent at the address identified in the "notices" section of Clause 18 of the Agreement.  This clause  provides the addresses where all

---

[2] Both the original Spanish Agreement and a certified English translation have been provided to the Court.

communications generated under the Agreement shall be delivered.  See DE 1 Exh. B.

In response to the letter from the Bogota Chamber of Commerce, Respondent's attorney sent a letter to Petitioner dated February 15, 2008.  That letter confirmed that Respondent's attorney "was in receipt of" correspondence from Petitioner notifying Respondent of the February 27, 2008 meeting in Colombia.  See DE 1 Exh. C.  The letter stated Respondent's position that "it will be impossible to coordinate arbitration between myself, my client, and our local counsel with such short notice.  We can schedule arbitration at a time which is convenient to all parties and counsel, including our local counsel, Jaime Lombana." Id.

Respondent did not attend the February 27, 2008 meeting, nor did it communicate with the Bogota Chamber of Commerce requesting more time in which to attend and respond to its request for a meeting to designate an arbitrator.  As a result, on February 27, 2008, the Bogota Chamber of Commerce sent a letter to Respondent stating that an arbitrator would be selected at a public drawing on March 6, 2008.  See DE 1 Exh. D.  The February 27, 2008 Bogota Chamber of Commerce letter was once again sent to Respondent at the address identified in the "notices" section of Clause 18 of the Agreement.  See DE 1 Exh. B, Exh. D.  The February 27, 2008 Bogota Chamber of Commerce letter was also sent to Respondent at a second address (8201 Peters Road, Plantation, FL 33324).  See DE 1 Exh. D.

Respondent did not attend the March 6, 2008 arbitrator selection, nor did it communicate with the Bogota Chamber of Commerce requesting more time to designate an arbitrator.  As a result, the Bogota Chamber of Commerce performed a public "drawing" for the selection of an arbitrator and selected attorney Marcela Romero de Silva as the sole arbitrator.  See DE 1 Exh. E.  She was confirmed to that role by the Bogota Chamber of Commerce on April 3, 2008.  See id.

That certification was sent to Respondent at three addresses:  (1) the address identified in the "notices" section of Clause 18 of the Agreement.  See DE 1 Exh. B, Exh. E; (2) Mr. Gordon at 8201 Peters Road, Plantation, FL 33324), see DE 1 Exh. E; and (3) Respondent's U.S. attorney: "Silverberg & Weiss; Att. Mr. Kraig S. Weiss; 2665 Executive Park Drive, Suite 2; Weston FL 33331; United States of America."  See DE 1 Exh. E.

Respondent still failed to participate in the arbitration proceedings.  Rather, on June 24, 2008, Respondent's American attorney wrote a letter to the Bogota Chamber of Commerce stating that he was in receipt of a Notice for Arbitration, but that Respondent was not participating in the arbitration because Respondent's law firm had not been notified and because Respondent had previously filed a civil action against Petitioner in the United States District Court for the Southern District of Florida.  See DE 1 Exh. F.  On December 4, 2008, Respondent's American attorney again wrote a nearly identical letter to the Bogota Chamber of Commerce.  See  DE 1 Exh. G.

The first procedural hearing for the arbitration took place on October 16, 2008 and, thereafter, the tribunal held at least ten (10) additional hearings during which it collected evidence.  See DE 1 Exh. H.  Respondent did not participate in these proceeding.  On March 25, 2009, the arbitrator issued a 71-page final award in Petitioner's favor ("the Award").  See DE 1 Exh. H[3].  The Award made specific findings as to the issue of Respondent's notification of the arbitration proceedings:

> Mercury knew timely about the existence of this arbitration and that although it had the possibility of becoming a party to it, it chose not to do so. . .

---

[3] A duly authenticated original of the Award is attached to the Petition as Exhibit H, along with its certified English translation.

> Mercury's decision of not becoming a party to this arbitration in order to exercise its legitimate right of defense and respond during the agreed proceedings the default charges filed by its co-contracting party, does not invalidate this arbitration, since according to the applicable legislation, although it was prudent and advisable for [M]ercury to become a party, its intervention in the procedure was not necessarily required; for the arbitration process to be valid, it was enough for Mercury to be duly notified of the establishment of the Arbitral Tribunal, which is what in fact happened.

Exh. H at pp. 22-23.  The Award analyzed Petitioner's claims, the evidence presented, and found in favor of Petitioner as follows:

    (1) The Agreement was terminated by virtue of its expiration on September 20, 2007, upon timely notice given by Petitioner to Respondent. Exh. H at p.68.

    (2) Respondent failed to comply with the Agreement because (i) it failed to timely pay Petitioner its share in the revenue from the international pre-paid telephone card business; (ii) it failed to comply with its obligations upon the termination of the Agreement; (iii) it promoted or allowed the illegal use of Petitioner's technical infrastructure; (iv) it failed to demonstrate having the legal authorizations it said it had in the Agreement and (v) it failed to provide sufficient information about its activities. Exh. H at p. 68.

    (3) Respondent was ordered to indemnify Petitioner for the damages it caused Petitioner by failing to comply with its contractual obligations.  Exh. H at p. 68.

    (4) As a consequence of the above, Respondent was ordered to pay Petitioner: (I) US $5,299,040.96; (ii) interest on that amount through the date of the Award in the amount of US $692,779.36; (iii) interest on the principal amount of US $5,299,040.96 from the date of the Award until payment in full by Respondent calculated at the LIBOR rate as of March 25, 2009, plus 3 points. Exh. H at p. 69.

(5) For costs incurred by Petitioner for calls serviced after the Agreement was terminated, Respondent was ordered to pay: (i) US $888,950.00; (ii) interest on the principal amount of US $888,950.00 from the date of the Award until payment in full by Respondent calculated at the LIBOR rate as of March 25, 2009, plus 3 points.  Exh. H at p. 69.

(6) Respondent was ordered to immediately cease directly or indirectly using, commercializing or exploiting any prepaid calling card that implicates the use of Petitioner's technological infrastructure or the activation of Pin Numbers that route calls to Petitioner's infrastructure. Exh. H at p. 69.

(7) Petitioner was authorized to adopt the technological measures it may deem necessary to prevent its technological infrastructure from being accessed through unauthorized prepaid cards and it was ordered that Respondent shall be liable for, and shall hold Petitioner harmless from, any eventual claim from users or cardholders that might be affected by such measures. Exh. H at p. 69.

(8) Respondent was ordered to pay Petitioner the fees and costs of the Tribunal as follows:  (i) Col $102,575,000.00; (ii) interest on that amount from the date that Petitioner made the payment on September 25, 2008 until the date that Respondent has paid that amount in full at the highest authorized default rate.  Exh. H at pp. 69-70.

(9) for Petitioner's attorneys' and expert fees, Respondent was ordered to pay Petitioner the amount of Col $198,075,000.00. Exh. H at p. 70.

On May 29, 2009 Petitioner filed the instant petition to confirm and enforce the Award against Respondent.

Discussion

Petitioner asserts that the Court should confirm and enforce the Award because it falls under the Panama Convention[4] and none of the grounds under the convention for refusal or deferral exists. See 9 U.S.C. § 301.[5] In 9 U.S.C. § 301, section 207 of the FAA is incorporated by reference and applied to Panama Convention awards. Section 207 provides:

> Within three years after an arbitral award falling under the Convention is made, any party to the arbitration may apply to any court having jurisdiction under this chapter for an order confirming the award as against any other party to the arbitration. The court shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention.

See also Scherk v. Alberto-Culver Co., 417 U.S. 506, 520 n.15 (1974) ("The goal of the Convention, and the principal purpose underlying American adoption and implementation of it, was to encourage the recognition and enforcement of commercial arbitration agreements in international contracts and to unify the standards by which agreements to arbitrate are observed and arbitral awards are enforced in the signatory countries.").

Confirmation of an arbitration award under the Panama Convention is a summary proceeding. American Life Ins. Co. v. Parra, 269 F.Supp.2d 519, 524 (D. Del. 2003).

---

[4] The Award falls under the terms of the Panama Convention, as the parties are citizens of countries that are parties to the Convention (Colombia and the Unites States), the parties' dispute is governed by Colombian law, and the arbitration took place in Colombia. See, e.g., Nicor Intern. Corp. v. El Paso Corp., 292 F.Supp.2d 1357 (S.D. Fla. 2003) (holding that Panama Convention applied to enforcement proceedings between citizens of Panama and the United States).

[5] For a summary of the codification of federal arbitration law in the three chapters of Title 9 of the United States Code, including the Inter-American Convention on International Commercial Arbitration [opened for signature Jan. 30, 1975, O.A.S.T.S. No. 42, 1438 U.N.T.S. 245,] (the "Panama Convention") (reprinted after 9 U.S.C. § 301), see this Court's Opinion and Order dismissing in favor of arbitration case no. 07-61529, Mercury Telco v. Empresa de Telecommunicaciones de Bogota S.A. E.S.P., at 3-4.

Confirmation is governed by 9 U.S.C. § 207, which provides that confirmation is mandatory "unless ... [a court] finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the ... [Panama] Convention." 9 U.S.C.A. § 207.  See Parra, 269 F.Supp.2d at 524.  Furthermore, "[t]he burden of proof is on the party defending against enforcement of the arbitral award." Empresa Constructora Contex Limitada v. Iseki, Inc., 106 F.Supp.2d 1020, 1024 (S.D. Cal. 2000).

Article 5.2 of the Panama Convention provides two grounds by which a competent authority of the State in which the recognition and execution is sought may refuse to recognize and execute an arbitral decision: "(a) That the subject of the dispute cannot be settled by arbitration under the law of that State; or (b) That the recognition or execution of the decision would be contrary to the public policy ('order public') of that State." Additionally, Article 5(1)(b) of the Panama Convention provides in pertinent part:

> 1. The recognition and execution of the decision may be refused, at the request of the party against which it is made, only if such party is able to prove to the competent authority of the State in which recognition and execution are requested: . . . b. That the party against which the arbitral decision has been made was not duly notified of the appointment of the arbitrator or of the arbitration procedure to be followed, or was unable, for any other reason, to present his defense.

In the instant case, Respondent raises three arguments in opposition to Petitioner's motion to confirm the award: (1) that Respondent did not receive notice of the arbitration; (2) that Respondent was unable to coordinate with local counsel in Colombia; and (3) that the arbitrator did not consider Respondent's claims raised in its action filed in the United States District Court for the Southern District of Florida.  The Court will address each argument in turn.

Based upon the chronology of the documentation received and sent by Respondent and its

8

counsel, set forth above, see supra, the Court agrees with the factual finding of the Award that there can be no doubt that Respondent had notice of the arbitration proceedings and chose not to participate. It did so at its own peril. Thus, the Court rejects Respondent's argument that the Court should not confirm the Award because Respondent did not receive notice of the arbitration.

The Court also rejects Respondent's argument that it should not enforce the Award because Respondent could not secure local counsel in Colombia. Importantly, there is no evidence that Respondent ever presented this alleged difficulty to the arbitral tribunal or sought from the tribunal an extension of time to arbitrate based on its difficulty in securing local counsel. Additionally, the Court finds Respondent's contention that every Colombian lawyer had a conflict of interest in handling a case against Petitioner to be implausible and not supported by Respondent's evidence, which consisted solely of one letter from one Colombian attorney stating: "For reasons of professional and work obligations, I am unable to work on the referred matters. Therefore, I ask you to seek another attorney." See DE 21, Exh. A. Nor does the Court find that Respondent's November 6, 2007 emails[6] demonstrate that Petitioner was aware that Respondent was unable to secure local counsel. These emails predated Astigarraga Davis Mullins & Grossman, P.A.'s representation of Petitioner by approximately three months, according to the unchallenged representation at the hearing that the firm began representing Petitioner in February of 2008. Moreover, the November 6, 2007 emails occurred nearly a year before the arbitration hearings, which began in October of 2008.

---

[6] These emails were taken into evidence at the October 1, 2009 hearing as one of Respondent's exhibits.

Finally, Respondent's argument that the Court should not confirm the Award because the arbitrator did not address or rule upon Respondent's claims asserted in the Florida lawsuit, including its fraudulent inducement claim, is to no avail. Respondent could have presented its claims to the arbitrator had it chosen to participate in the arbitration proceedings. It was not the responsibility of the arbitrator or of Petitioner to raise Respondent's claims for it in Respondent's absence.

Accordingly, as the Court has found no grounds upon which to refuse to recognize and execute the arbitration Award, the Court shall confirm it.

Conclusion

Based upon the foregoing, it is hereby **ORDERED AND ADJUDGED** as follows:

1. The Petition to Confirm and Enforce Foreign Arbitral Award (DE 1) is **GRANTED**.

2. All remaining pending motions are **DENIED AS MOOT**.

3. The Clerk shall **CLOSE THIS CASE**.

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 31st day of October, 2009.

_____
KENNETH A. MARRA
United States District Judge

copies to:  all counsel of record